IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LISA J. JERABEK, | | |
| Plaintiff, | | **4:19CV3049** |
| vs. | | |
| HOWARD-GREELEY FARM SERVICE AGENCY, a Nebraska branch office of the USDA Farm Service Agency; and THOMAS J. VILSACK, Secretary, United States Department of Agriculture, | | **MEMORANDUM AND ORDER** |
| Defendants. | | |

Following her termination from the Howard-Greeley branch of the United States Department of Agriculture Farm Service Agency, Plaintiff Lisa Jerabek filed this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging she was discriminated and retaliated against, was denied due process, and suffered a hostile work environment due to her age. The Defendants have filed a Motion for Summary Judgment on all claims. (Filing 82). For the reasons that follow, the Defendants' Motion will be granted.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.

2011) (en banc) (internal quotation marks and citation omitted). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (internal quotation marks and citations omitted). But "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citations omitted).

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citation omitted).

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Defendant's Undisputed Material Facts

These are the relevant undisputed material facts, as proposed by the Defendants, and either admitted by, or not properly disputed by, Plaintiff Jerabek.

### 1.  Background

1.     At all relevant times, Plaintiff Lisa Jerabek was a Grade 7 Program Technician ("PT") working for the Howard-Greeley County, Nebraska, office ("the

office") of the Farm Service Agency ("FSA"), an agency with the United States Department of Agriculture ("USDA"). (Filing 26 ¶¶ 2, 4).

2.      Jerabek was a county office employee, but she worked in a USDA facility utilizing USDA equipment and credentials. She was eligible to participate in federal benefit programs. The EEO process that applies to federal employees applies to PTs, including Jerabek. (Filing 84-3, Divis Decl. ¶¶ 8-9).

3.      Jerabek was born in 1966. (Filing 26 ¶ 12).

4.      PTs range from Grade 4 to 7. A Grade 7 PT must be able to work independently in two or more programs or be considered the office expert in at least one program. (Filing 84-3, Divis Decl. ¶ 10; Filing 84-1, Sack Decl. ¶ 24).

5.      Four full-time PTs were in the office during the relevant time frame: Rachelle Wieskamp (Grade 5, born in 1988), Jona Dailey-Barr (Grade 7, born in 1972), Emily Vanis (Grade 5, born in 1986), and Jerabek. (Filing 84-3, Divis Decl. ¶¶ 17-18; Filing 84-1, Sack Decl. ¶¶ 13-17, 21, 26).

6.      From June 2016 through Jerabek's removal in August 2018, Jerabek's supervisor was County Executive Director Tansy Sack ("CED Sack"). CED Sack's supervisor was District Director Kimberly Benner ("DD Benner") and the Howard-Greeley County Committee ("County Committee"). (Filing 84-1, Sack Decl. ¶¶ 6-7; Filing 84-2, Benner Decl. ¶ 7).

7.      In the 2016-2017 timeframe, Jerabek's responsibilities included administrative functions, farm-record updates, payment eligibility, and date-of-death workflows. She also had program responsibility for the conservation programs. (Filing 84-1, Sack Decl. ¶ 25).

## 2. Jerabek's EEO Complaints

8.    In February 2017, Jerabek filed an informal EEO complaint. Jerabek withdrew that EEO complaint in April 2017. (Filing 26 ¶ 19, 22).

9.    Jerabek filed a second EEO complaint on February 27, 2018. (Filing 26 ¶ 33).[1]

## 3. Letter of Reprimand

10.    On August 17, 2017, when Jerabek was on leave, CED Sack found a box of documents in the ADP room at the office. The ADP room contained the computer server. (Filing 84-1, Sack Decl. ¶¶ 39, 40, 42).

11.    No producer files or documents were to be kept in the ADP room. Therefore, staff would not look in that room if they were looking for a document or file. (Filing 84-1, Sack Decl. ¶ 40; Filing 84-2, Benner Decl. ¶ 10).

12.    Jerabek put the box in the ADP room, which was locked, and did not tell anyone about the box before leaving on vacation. She did not have permission to place the box in the ADP room. Jerabek placed the box of documents in the locked ADP room because she "felt that they were going to go through my desk" and she

---

[1] Neither party has directed the court to actual copies of the EEO complaints. Instead, they refer to Jerabek's Amended Complaint, which describes Jerabek's February 2017 complaint as objecting to "discrimination and harassment based on her treatment during the previous year" (Filing 26 ¶ 19) and her February 2018 complaint as alleging "discrimination and harassment (non-sexual) based on reprisal (prior EEO activity)" (Filing 26 ¶ 33). The record does contain a copy of Jerabek's withdrawal of her first complaint (Filing 84-5 at CM/ECF p. 73), which described the first complaint as claiming that she was "harassed" when Sack and Benner met with her to discuss a contract, when Sack demanded to know what Jerabek and another employee were talking about over lunch, and when Sack falsely claimed that a producer had complained about Jerabek.

"stuck them in what they call an ADP room because no one ever went into that room." (Filing 84-5, Jerabek Depo. 88:23-89:23, 96:10-19; Filing 84-1, Sack Decl. ¶ 47 & Attch. C).

13.    CED Sack took a picture of the box and made a list of the original documents in the box. Sack believes the box contained documents with original signatures, critical documents such as contracts, and old documents. Jerabek disputes the contents of the box, but admits that the box contained at least one original document signed by a producer. (Filing 84-5, Jerabek Depo. 89:24-90:12; Filing 84-1, Sack Decl. ¶¶ 43-46 & Attch. B; Filing 84-2, Benner Decl. ¶ 9).

14.    The documents in the box concerned CED Sack and DD Benner because, in their opinions, (1) it was contrary to FSA policy for handling documents and protecting Personally Identifiable Information (PII); (2) the original documents were extremely important and because they were not properly handled, staff had to contact producers to re-sign documents; and (3) only ADP equipment was to be kept in the ADP room, so staff would not have known to look in that room for documents. (Filing 84-1, Sack Decl. ¶¶ 45-46; Filing 84-2, Benner Decl. ¶ 10).

15.    On August 31, 2017, CED Sack met with Jerabek and gave her the original contract that was found in the box. CED Sack instructed Jerabek to complete the necessary steps to properly process the documents. (Filing 84-1, Sack Decl. ¶ 48; Filing 93, Jerabek Depo. 99:9-16).

16.    After consultation with Nebraska Administrative Officer Mike Sander (AO Sander) and Employee Labor Relations Specialist David Simmons (LRS Simmons), CED Sack and DD Benner issued Jerabek a Letter of Reprimand on December 7, 2017, to encourage Jerabek to properly handle documents. (Filing 84-1, Sack Decl. ¶¶ 51, 54 & Attch. E; Filing 84-2, Benner Decl. ¶ 12; Filing 84-4, Simmons Decl. ¶ 3).

17.     The Letter of Reprimand was consistent with the requirements of FSA Handbook 22-PM and was appropriate because it was the lowest level of discipline, and Jerabek had not been disciplined in the prior five years. (Filing 84-4, Simmons Decl. ¶ 3 & Attch. A).

**4. FY 2017 Rating**

18.     During the Fiscal Year ("FY") 2017 rating period, Sack and Benner concluded that Jerabek performed at an unacceptable level. She issued payments late, which resulted in FSA paying interest on the late payment. She issued late-payment interest when it wasn't due. She failed to follow through on directives given by CED Sack. There were numerous examples of tasks Jerabek failed to complete in a timely manner and repeated mistakes that, in their opinion, should not be made by a Grade 7 PT. (Filing 84-2, Benner Decl. ¶ 14; Filing 84-1, Sack Decl. ¶¶ 65-66).[2]

19.     CED Sack and DD Benner consulted with AO Sander and LRS Simmons regarding Jerabek's FY 2017 Performance Appraisal and determined Jerabek failed to meet a critical element. (Filing 84-1, Sack Decl. ¶ 67; Filing 84-2, Benner Decl. ¶ 15; Filing 84-4, Simmons Decl. ¶ 4).

---

[2] With no citation to evidence, Jerabek objects to "the implications and assumptions of their interpretation of her actions." (Filing 90, Br. Opp'n Mot. Summ. J. at CM/ECF p. 3). This is insufficient to properly dispute the Defendant's proposed fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634-35 (8th Cir. 2016) ("[e]vidence, not contentions, avoids summary judgment") (internal quotation marks and citation omitted)); *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) ("The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." (internal quotation marks and citation omitted)).

20.     CED Sack rated Jerabek with a "Does Not Meet Fully Successful" rating for Performance Element 2, titled "Execution of Duties/Technical Knowledge and Skill" and "Fully Successful" on the remaining elements. Performance Element 2 was a critical performance element. DD Benner concurred with this rating. (Filing 84-1, Sack Decl. ¶¶ 68-69 & Attch. F; Filing 84-2, Benner Decl. ¶ 16).

21.     Because Jerabek was rated "Does Not Meet Fully Successful" on a critical performance element, her overall rating was automatically "Unacceptable." (Filing 84-4, Simmons Decl. ¶ 4(f); Filing 84-2, Benner Decl. ¶ 17; Filing 84-1, Sack Decl. ¶ 70 & Attch. F).

22.     The decision to rate Jerabek an "Unacceptable" overall rating was consistent with the requirements of FSA Handbook 5-PM (Revision 12). (Filing 84-4, Simmons Decl. ¶¶ 4(a), 4(h) & Attch. B).

23.     In December 2017, PT Wieskamp left the office and all the PTs in the office took on additional duties. These additional duties did not form the basis for Jerabek's FY 2017 performance rating or any other action. (Filing 84-1, Sack Decl. ¶¶ 26-27; Filing 84-2, Benner Decl. ¶ 21).

24.     The workload for all PTs increased when there was a lot of activity with producers, such as during program sign-up in December and when producers certified their farm acres in May. All PTs were required to assist producers in completing this paperwork. (Filing 84-1, Sack Decl. ¶ 28; Filing 84-5, Jerabek Depo. 61:7-62:11).

25.     Management was not able to place Jerabek on an Opportunity to Improve (OTI) immediately following the FY 2017 Performance Appraisal. (Filing 84-4, Simmons Decl. ¶ 4(j)).

## 5.  Removal of Acting CED Designation

26.     In July 2016, CED Sack designated Jerabek to be the Acting CED. (Filing 84-5, Jerabek Depo. 113:16-18; Filing 84-1, Sack Decl. ¶ 20).

27.     On December 12, 2017, CED Sack designated a different PT as the Acting CED. CED Sack took this duty away from Jerabek to allow her to dedicate more time towards improving her performance. Removal of Jerabek as the Acting CED did not affect Jerabek's pay or any other benefits. DD Benner concurred with the decision. (Filing 84-1, Sack Decl. ¶¶ 75-77; Filing 84-2, Benner Decl. ¶ 19).[3]

## 6.  Performance Into 2018

28.     Sack and Benner believed that Jerabek continued to perform at an unacceptable level in early 2018 and was still failing to meet the requirements of Performance Element 2 for her mid-year 2018 Performance Appraisal. (Filing 84-1, Sack Decl. ¶ 99). For example:

    a.     Jerabek repeatedly provided producer information to unauthorized individuals. DD Benner was concerned because the Privacy Act requires the protection of producers' information, and documents cannot be handed over without proper consent. Jerabek continued to violate the policy about protecting PII.

---

[3] Jerabek does not dispute these facts, but states, "It is Jerabek's belief CED Sack did this in retaliation. While it did not affect her pay, it was seen as a demotion to have this title taken from her." (Filing 90 at CM/ECF p. 4). In violation of the Local Rules, Jerabek has not supported her response to the moving party's proposed fact with "pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies . . . ." NECivR 56.1(b)(1). Further, Jerabek's "beliefs" do not create a material issue of fact.

b.     Jerabek added two individuals to a farm record that they did not own.

c.     Jerabek did not update office records to reduce base acres on a farm by the number of acres enrolled in a conservation program, which kept the farm from enrolling in the farm program.

d.     Jerabek failed to complete some of her administrative duties, which required CED Sack to complete those duties.

e.     Jerabek incorrectly issued a payment to a deceased producer, rather than the correct beneficiary.

f.     By the end of February 2018, Jerabek had still not completed some of the farm-record changes given to her in September 2017. Jerabek missed multiple deadlines for completing this task.

g.     By the end of February 2018, Jerabek still had not completed the work necessary to address the documents found in the box Jerabek had placed in the ADP room in August 2017. She had missed multiple deadlines for completing this task and was unable to find several of the original documents that CED Sack had given her to complete.

(Filing 84-2, Benner Decl. ¶ 20; Filing 84-1, Sack Decl. ¶¶ 79-98).[4]

---

[4] Again, with no citation to evidence, Jerabek objects to "the implications and assumptions of their interpretation of her actions." (Filing 90 at CM/ECF p. 4). This is insufficient to properly dispute the Defendant's proposed fact for the reasons stated in footnote 2.

29. Jerabek was at the highest grade for a PT, and DD Benner felt Jerabek should not be making errors in these areas. (Filing 84-2, Benner Decl. ¶ 20).[5]

30. CED Sack and DD Benner provided LRS Simmons with specific information and Handbook references regarding Jerabek's deficient performance between December 2017 and March 2018. LRS Simmons advised there was sufficient documentation to place Jerabek on an OTI pursuant to Handbook 22-PM, Amend. 91, Part 10, Section 3, paragraphs 431-432. (Filing 84-4, Simmons Decl. ¶ 6 & Attch. C, pp. 4-8; Filing 84-2, Benner Decl. ¶ 22; Filing 84-1, Sack Decl. ¶ 100).

31. Jerabek does not dispute she made some of these errors, including adding individuals as owners on a farm they did not own and paying a deceased producer rather than the correct beneficiary. (Filing 84-5, Jerabek Depo. 132:14-21; 137:14-138:11). Jerabek does not dispute the underlying facts in the other errors, but justified her actions due to computer-software issues, assuming verbal authority was sufficient to share a producer's PII, assuming a producer's daughters were also owners, and her expectation that certain administrative duties could have been handled by CED Sack. (Filing 84-5, Jerabek Depo. 125:24-126:10; 127:23-129:13, 132:22-134:17; 134:18-135:14).

### 7. Opportunity to Improve

32. CED Sack and DD Benner decided to place Jerabek on an OTI in an attempt to bring Jerabek's performance up to the "Fully Successful" level. (Filing 84-1, Sack Decl. ¶ 100).

_____

[5] Again, with no citation to evidence, Jerabek objects to "the implications and assumptions of their interpretation of her actions." (Filing 90 at CM/ECF p. 4). This is insufficient to properly dispute the Defendant's proposed fact for the reasons stated in footnote 2.

33.     CED Sack and DD Benner met with Jerabek on March 29, 2018, to start her on a 90-day OTI. The OTI listed specific performance objectives and provided guidance to Jerabek in seeking assistance with questions related to the performance of her duties. Jerabek was allowed three Exceptions—or errors—during the OTI period. (Filing 84-1, Sack Decl. ¶ 100, 104-106 & Attch. L & M; Filing 84-2, Benner Decl. ¶ 23).

34.     In order to determine whether Jerabek understood the necessary policies, CED Sack instructed Jerabek that when she had questions, she was to research the applicable Handbook provisions and bring the provisions to CED Sack for assistance. (Filing 84-1, Sack Decl. ¶ 110).

35.     During the OTI period, CED Sack met with Jerabek periodically to review Jerabek's work and ensure Jerabek could complete her work in an accurate and timely manner. (Filing 84-5, Jerabek Depo. 141:12-142:13; Filing 84-2, Benner Decl. ¶ 24; Filing 84-1, Sack Decl. ¶ 111).

36.     Normally, supervisors do not check the day-to-day work of Grade 7 PTs. Due to the nature and frequency of Jerabek's errors, DD Benner directed CED Sack to double-check every producer document to ensure the Power of Attorney documentation was correct. (Filing 84-2, Benner Decl. ¶ 27).

37.     During the OTI period, Jerabek received support. In addition to regular meetings, CED Sack provided Jerabek with a spreadsheet to help Jerabek track the farm-record changes. Jerabek also attended training, which included a peer mentor from another office, a one-day training seminar, and regular conference calls. (Filing 84-5, Jerabek Depo. 145:4-149:10; 150:13-23; Filing 84-1, Sack Decl. ¶ 112).

38.     During the OTI period, Jerabek brought questions to CED Sack without having researched the Handbook provisions. (Filing 84-5, Jerabek Depo. 151:8-11). Jerabek testified that she "tried to read the handbook, but the way one person reads it and the way a person interprets it and the way it needs to be applied, it's nice to be

able to bounce it off somebody to see if what you're reading is how it needed to be implemented . . . ." (Filing 93, Jerabek Depo. 150:13-18).

39.     During the OTI period, CED Sack discussed Jerabek's major errors with DD Benner and LRS Simmons. They agreed that four of the errors would be documented as Exceptions to the OTI plan. (Filing 84-1, Sack Decl. ¶ 113; Filing 84-2, Benner Decl. ¶ 25).

### a.  Exception 1

40.     FSA Handbook 1-CM, Paragraph 728C and Exhibit 60 authorized an FSA employee who verifies the identity of the grantor to witness a producer's signature on an FSA-211 Power of Attorney form. It further provides that an FSA-211 shall not be processed if it is incomplete, inaccurate, or not properly witnessed. (Filing 84-1, Sack Decl. ¶ 114 & Attch. N).

41.     On April 4, 2018, Jerabek processed two FSA-211s that did not include a signature by an FSA witness. (Filing 84-1, Sack Decl. ¶¶ 115-116 & Attch. O).

42.     Jerabek admitted she recorded these FSA-211s, and they were not properly witnessed. (Filing 84-5, Jerabek Depo. 157:19-158:6 & Ex. 20). Jerabek maintains there was no consequence to the FSA-211s not being properly witnessed in this case:

> I did witness [X]'s signature granting signature authority to [Y] on February 7, 2018. I admit I failed to sign box 9 of the FSA-211 as required by my handbook. . . . To remedy the situation, my supervisor had me sign the form FSA-211 and add a note that I had witnessed the signature of [X], but had forgotten to sign box 9. . . . To my knowledge and information, no administrative error, liability or problems processing or issuing payment resulted as a result of my temporary lack of signature.

(Filing 92, Jerabek Aff. ¶¶ 6-9).

43.     In general, errors on FSA-211s can have significant consequences. For example, if someone does not have authority to sign a contract but does so, the contract is invalid, and producers are not eligible for payments. If an invalid FSA-211 were filed, the error may not have been discovered until the hard-copy forms were pulled from the files. (Filing 84-2, Benner Decl. ¶ 26; Filing 84-1, Sack Decl. ¶ 118).

44.     CED Sack discussed the errors with DD Benner and LRS Simmons, and they determined this error would be Jerabek's first Exception under the OTI. (Filing 84-1, Sack Decl. ¶ 118).

45.     On April 11, 2018, CED Sack issued Jerabek a Notice of OTI Performance Exception for the first violation. (Filing 84-1, Sack Decl. ¶ 119 & Attch. P).

### b.  Exception 2

46.     Handbook1-CM (Rev. 3) paragraph 707A mandated employees verify signature authority is on file before approving, acting on, or authorizing benefits when a representative signs a document on behalf of a person or legal entity requesting a benefit or payment. (Filing 84-1, Sack Decl. ¶ 122 & Attch. Q).

47.     On April 24, 2018, Jerabek accepted a contract for a producer which was signed by another person as Power of Attorney for the producer. The contract was invalid because there was not a properly executed FSA-211 on file for that person to act as the Power of Attorney for the producer. (Filing 84-1, Sack Decl. ¶¶ 123-124 & Attch. R & S).

48.     Jerabek admitted she accepted an invalid signature without verifying that the proper signature authority was on file. (Filing 84-5, Jerabek Depo. 158:15-159:21 & Ex. 21).

49. CED Sack discussed the errors with DD Benner and LRS Simmons, and they determined this error would be Jerabek's second Exception under the OTI. (Filing 84-1, Sack Decl. ¶ 125).

50. On April 11, 2018, CED Sack issued Jerabek a Notice of OTI Performance Exception for the second violation. (Filing 84-1, Sack Decl. ¶ 126 & Attch. T).[6]

### c. Exception 3

51. Handbook 1-CM (Rev 3) paragraph 711B provided that if LLC documents do not allow for redelegation of signature authority, an FSA-211 Power of Attorney form must be signed by all members or authorized managers of the LLC. (Filing 84-1, Sack Decl. ¶ 129 & Attch. U).

52. Jerabek had been directed several times to look at the Handbook and entity papers every time she received an FSA-211 for an LLC. (Filing 84-1, Sack Decl. ¶¶ 128, 130).

53. On May 23, 2018, Jerabek accepted and processed an FSA-211 signed by only one member of an LLC. Jerabek believed that the FSA-211 was valid because the LLC Operating Agreement for the entity at issue allowed for any one of the members to enter into contracts or otherwise bind the company. (Filing 84-1, at CM/ECF p. 116). However, that document does not explicitly authorize a single member to redelegate signature authority to a third party. (Filing 84-1, Sack Decl. ¶ 132 & Ex. Y; Filing 84-2, Benner Decl. Attch. C; Filing 84-3, Divis Decl. Attch. B,

_____

[6] The parties have agreed that Sack issued Jerabek notice of the second OTI violation on April 11, 2018. Sack's Declaration actually states such notice was issued on April 30, 2018. (Filing 84-1, Sack Decl. ¶ 126). The notice itself is dated May 3, 2018. (Filing 84-1 at CM/ECF pp. 103-104). The date discrepancies are irrelevant to the disposition of the pending Motion for Summary Judgment.

pp. 1-2; Filing 84-4, Simmons Decl. Attch. E). Under the FSA Handbook 1-CM, Paragraph 711B, if the entity documents do not allow for redelegation of signature authority to a third party, all members or authorized managers of the LLC must sign the FSA-211. (Filing 84-1, Sack Decl. Attch. U). Therefore, Sack believed the FSA-211 was invalid because it did not contain the signatures of all the LLC members. (Filing 84-1, Sack Decl. ¶¶ 131-133 & Attch. W & X).

54.     Jerabek partially admitted to Exception 3. She admitted she accepted the FSA-211 signed by only one member of the LLC, and she only reviewed the back page of the LLC entity document to see if the grantor was a member. Jerabek reviewed FSA-211s from other LLCs, and based on the other LLC examples, she did not feel it necessary to have all members sign the FSA-211 for the specific LLC entity. (Filing 84-5, Jerabek Depo. 162:13-167:1, 168:22-169:7; 175:2-14 & Ex. 23, 26).

55.     CED Sack discussed the errors with DD Benner and LRS Simmons, and they determined this error would be Jerabek's third Exception under the OTI. (Filing 84-1, Sack Decl. ¶ 134).

### d.  Exception 4

56.     On March 29, 2018, during the meeting on Jerabek's OTI plan, CED Sack directed Jerabek that the farm-record changes given to her in September 2017 were to be her number-one priority. DD Benner agreed with that prioritization. At the meeting, Jerabek agreed to do the farm-record changes first. (Filing 84-1, Sack Decl. ¶ 135; Filing 84-2, Benner Decl. ¶ 28; Filing 84-5, Jerabek Depo. 153:1-154:5).

57.     The office's work depends on the accurate and timely recording of information, and farm-record changes are relied upon by other FSA offices. (Filing 84-2, Benner Decl. ¶ 28).

58.     Jerabek admitted that it is important to keep farm records updated because they are the foundation for participating in farm programs. (Filing 84-5, Jerabek Depo. 184:15-185:6).

59.     As of June 7, 2018, Jerabek had still not completed seven of the farm-record changes pending since September 2017. (Filing 84-1, Sack Decl. ¶¶ 138, 141 & Attch. G). Jerabek admitted this fact. (Filing 84-5, Jerabek Depo. 185:13-186:19).

60.     Jerabek repeatedly failed to follow directives regarding the farm-record changes. These same farm-record changes were discussed with Jerabek on at least 12 occasions, and the deadline for completion had been extended numerous times. (Filing 84-1, Sack Decl. ¶¶ 80-81, 85-86, 94-98, 101-103, 135-137).

61.     After nearly six months of attempts to get Jerabek to make the farm-record changes, it was evident to CED Sack that Jerabek was not going to make the changes. (Filing 84-1, Sack Decl. ¶ 141).

62.     CED Sack discussed the failure to make the farm-record changes with DD Benner and LRS Simmons, and they determined this would be Jerabek's fourth Exception under the OTI. (Filing 84-1, Sack Decl. ¶ 142).

63.     On June 14, 2018, CED Sack issued Jerabek a Notice of OTI Performance Exception for the third and fourth violations. (Filing 84-1, Sack Decl. ¶ 139 & Attch. Y).

**8.  Jerabek's Removal**

64.     Jerabek failed the OTI because she exceeded the number of allowed Exceptions and failed to improve her performance. (Filing 84-2, Benner Decl. ¶ 25; Filing 84-1, Sack Decl. ¶ 143).

65.     After consulting with LRS Simmons and DD Benner on the four Exceptions to the OTI, CED Sack issued Jerabek a Notice of Proposed Removal on July 3, 2018. (Filing 84-4, Simmons Decl. ¶ 7; Filing 84-2, Benner Decl. ¶¶ 29-30; Filing 84-1, Sack Decl. ¶ 146 & Attch. AA).

66.     The decision to issue Jerabek a Notice of Proposed Removal was consistent with Handbook 22-PM, Amend. 91, Part 10, Section 3, Paragraph 433. (Filing 84-4, Simmons Decl. ¶¶ 7(a), 7(g) & Attch. C, pp. 9-12).

67.     The County Committee, which consists of five civilians with oversight of the office and the authority to decide the Notice of Proposed Removal, voted unanimously to approve the removal after considering evidence supporting the four exceptions to the OTI provided by DD Benner and written and oral responses provided by Jerabek's counsel. (Filing 84-3, Divis Decl. ¶¶ 19, 27-32; Filing 84-2, Benner Decl. ¶¶ 31-38 & Attch. B & C; Filing 84-4, Simmons Decl. ¶ 8).

68.     The decision to remove Jerabek was reached after the County Committee's review of the Notice of Proposed Removal, the Materials Relied Upon ("MRU") for the proposed removal, Jerabek's July 17, 2018, written reply, and her supporting documents. During the hearing, Jerabek also provided an oral reply and an additional affidavit. (Filing 84-4, Simmons Decl. ¶ 8(a) & (b) and Attch. D; Filing 99-1, Simmons Supp. Decl. ¶ 4).

69.     The County Committee did not discuss Jerabek's age or EEO complaints at their meeting, but Jerabek described her February 2017 informal EEO complaint in her written affidavit. (Filing 84-5, Jerabek Depo. 190:24-193:24; Filing 84-3, Divis Decl. ¶ 34; Filing 84-2, Benner Decl. Attch. B).

70.     Jerabek appealed that decision to the Nebraska State Committee, which consisted of four civilian members. (Filing 84-3, Divis Decl. ¶¶ 36, 38; Filing 84-4, Simmons Decl. ¶ 9).

71.    After reviewing the case file, which included Jerabek's written materials, and hearing an oral statement from Jerabek's counsel, the State Committee voted unanimously to sustain the removal determination. (Filing 84-3, Divis Decl. ¶¶ 37-44 & Attach. A & B; Filing 84-4, Simmons Decl. ¶ 9(c)).

72.    Jerabek's counsel mentioned Jerabek's EEO complaints at the State Committee meeting, and the State Committee stated it had no bearing on their review of the removal. (Filing 84-3, Divis Decl. ¶ 41 & Attach. A, B. p. 2).

73.    Jerabek elected to retire under a discontinued-service retirement effective August 3, 2018. (Filing 84-3, Divis Decl. ¶ 49; Filing 84-5, Jerabek Depo. 35:12-14, 42:13-24; 45:10-46:15).

## B.  Plaintiff's Undisputed Material Facts

These are the relevant undisputed material facts, as proposed by Plaintiff Jerabek, and either admitted by, or not properly disputed by, the Defendants.[7]

1.    Prior to 2017, Jerabek generally received positive performance reviews. (Filing 92, Jerabek Aff. ¶¶ 4-5).[8]

_____

[7] The court does not accept Plaintiff's two proposed facts regarding a former employee in the office, Rachelle Wieskamp, who resigned from her position because she felt she had been subject to disability discrimination and who opined that Jerabek's treatment of PII was not unusual as compared with other employees. This testimony is irrelevant to whether Jerabek was subject to age discrimination or retaliation. Wieskamp never requested an accommodation, filed an EEO complaint, or made any allegations regarding age discrimination or retaliation; rather, she chose to resign from the agency. (Filing 93 at CM/ECF p. 59). Further, whether or not Jerabek's treatment of PII was consistent with others' treatment of PII has nothing to do with whether Jerabek violated PII procedures.

[8] The court does not accept Plaintiff's proposed fact that "Following her EEO Complaint, suddenly her work was repeatedly deemed unacceptable" because it is

18

2.     The three people who made the decision to issue Jerabek a letter of reprimand, the OTI, and Notice of Proposed Removal were CED Sack, DD Benner, and David Simmons. (Filing 93, Sack Depo. 198:17-21). Of those three people, Jerabek had filed informal and/or formal complaints against two—CED Sack and DD Benner. (Filing 93, Sack Depo. 198:11-16).

3.     Jerabek was qualified for her position. (Filing 93, Sack Depo. 93:13-15).

4.     While Jerabek was under the supervision of CEDs preceding CED Sack, Jerabek received awards and good performance reviews. For example:

    a.     In January 2013, Jerabek received a 20-hour time-off award for exceeding expectations and support to the FSA. (Filing 92 at CM/ECF p. 4).

    b.     Jerabek's performance review for FY October 1, 2014, to September 30, 2015, rated her performance as "Superior." Comments from

---

not supported by any evidence and therefore does not comply with NECivR 56(b)(1) ("Each material fact in the response [] must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony [] or other materials"). Jerabek withdrew her first EEO Complaint in April 2017, and she did not file her Second EEO Complaint until February 27, 2018. Jerabek's unacceptable performance rating was presented in December 2017, nine months after Jerabek withdrew her first EEO Complaint and well before Jerabek filed her second EEO Complaint.

Further, the court does not accept Plaintiff's proposed fact that "There is no evidence of complaints about Ms. Jerabek's performance other than from CED Sack and DD Benner. This Court should disregard Mr. Simmons's unsupported hearsay statements about AO Sander's statements. (Simmons Decl., ¶ 2)." The first sentence is not supported by any evidence and therefore does not comply with NECivR 56(b)(1). The second sentence is not a factual allegation, but rather an argument that Mr. Simmons' statement that AO Sander contacted him and reported Jerabek was having issues with timeliness and handling documents is hearsay. This statement merely describes how Mr. Simmons became familiar with Jerabek and does not create an issue of material fact.

the rating official included, "Lisa has done an outstanding job stepping up as acting CED during my absence. She has helped out when needed in other programs, and continues to stay ahead in her own programs. Lisa has been a huge part of our team success." (Filing 92 at CM/ECF pp. 29-31).

       c.     Jerabek received an undated letter of recognition to SED Dan Steinkruger for Jerabek's volunteer help in the Oklahoma LFP Program. (Filing 92 at CM/ECF p. 5).

       d.     In August 2015, Jerabek received a Certificate of Appreciation for extra efforts while on detail providing assistance and outstanding leadership. (Filing 92 at CM/ECF pp. 32-33).

       e.     In June 2016, Jerabek received a Recommendation and Approval of Awards for "good leadership while performing as Acting CED." (Filing 92 at CM/ECF p. 3).

     5.     Jerabek's performance review for FY October 1, 2015, to September 30, 2016, rated her performance as "Fully Successful." As part of her accomplishments, it was noted: "Lisa has been a good source of knowledge and training to the 2 new PTs. She is always willing to show them how to do something or explain how and why we implement a policy. She has been a great leader." (Filing 92 at CM/ECF pp. 6-17). CED Sack did not start supervising Jerabek until June 13, 2016, and she incorporated the previous CED's mid-year review of Jerabek into Jerabek's 2016 Performance Appraisal. (Filing 84-1 at CM/ECF pp. 1-35 ¶¶ 2, 6, 34-36).

     6.     In August 2016, Jerabek received a Certificate of Appreciation for extra efforts serving as Acting CED. (Filing 92, CM/ECF p. 34).

## III. DISCUSSION

Plaintiff Jerabek asserts the following claims: (1) Defendants discriminated against her because of her age in violation of the ADEA, 29 U.S.C. § 633a(a); (2) Jerabek was retaliated against after filing two EEO complaints under the ADEA and Title VII, 42 U.S.C. §§ 2000e to 2000e-17[9]; (3) Jerabek was denied due process in the manner in which she was disciplined and terminated from her employment; and (4) Jerabek was subject to a hostile work environment.[10] (Filing 26, Amended Complaint).

---

[9] The federal-sector provision of the ADEA, 29 U.S.C. § 633a(a), provides that "All personnel actions affecting employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." Title VII provides that "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The parties do not dispute that Plaintiff was a federal employee for purposes of the ADEA and Title VII. *See, e.g.*, *Witter v. Johanns*, No. 2:07-CV-510, 2008 WL 4404298, at *6 (S.D. Ohio Sept. 23, 2008) (state and county FSA parties were federal employees for purposes of ADEA); *Martin v. Perdue*, No. 5:17-CV-00109, 2020 WL 1429211, at *15 (E.D. Ark. Mar. 19, 2020) (treating FSA employee as federal employee for purposes of Title VII claim). Courts have interpreted the federal-sector provisions of the ADEA and Title VII to make it unlawful to retaliate against an employee due to the filing of a complaint of discrimination under the ADEA or Title VII, respectively. *Gomez-Perez v. Potter*, 553 U.S. 474, at 481, 487-88, 491 & n.4 (2008) ("we hold that § 633a(a) prohibits retaliation against a federal employee who complains of age discrimination"); *AuBuchon v. Geithner*, 743 F.3d 638, 641 (8th Cir. 2014) (Title VII). *See also*, *Murillo v. Kittelson*, No. 8:19CV571, 2020 WL 3250231, at *3 (D. Neb. June 16, 2020) ("Although neither federal-sector provision [in the ADEA and Title VII] mentions 'retaliation,' a . . . federal employee who is a victim of retaliation due to the filing of a complaint of discrimination under Title VII or the ADEA may assert a claim for retaliation.").

[10] Plaintiff's Amended Complaint does not allege a separate cause of action for hostile work environment, but uses this phrase in the body of her other causes of action. Out of an abundance of caution, the court will assume she has properly alleged a claim for hostile work environment.

As an initial matter, the court notes that the only proper party defendant in a Title VII lawsuit brought by a federal employee is the head of the department, agency, or unit. 42 U.S.C. § 2000e-16(c). In federal-sector actions brought under the ADEA, the only proper defendant is the same person as under Title VII. *See Murillo v. Kittelson*, No. 8:19CV571, 2020 WL 3250231, at *4 (D. Neb. June 16, 2020) (ADEA does not specify who must be named as proper party defendant, but ADEA federal-sector provision has been construed consistently with Title VII); *see also Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988) (proper person to be sued under ADEA is same person as under Title VII). Accordingly, the only proper defendant for Jerabek's ADEA and Title VII claims is the Secretary of the Department of Agriculture, and Defendant Howard-Greeley Farm Service Agency must be dismissed for lack of jurisdiction.[11]

## A.  The McDonnell Douglas Framework

To survive a motion for summary judgment on both age discrimination and retaliation claims, Jerabek must show either direct evidence of age discrimination or retaliation or satisfy the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973). *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013). Because Jerabek does not present any direct evidence to support a finding that she suffered an adverse action because of her age or because she engaged in EEO activity, the framework established in *McDonnell Douglas* applies. *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015).

The *McDonnell Douglas* three-step process requires the plaintiff to establish a prima facie case of discrimination and/or retaliation. *Id.* (citations omitted). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action.

---

[11] Jerabek does not object to this conclusion in her Brief in Opposition to Defendant's Motion for Summary Judgment (Filing 90). Because there is only one Defendant remaining, I shall refer only to that one Defendant in the remainder of this Memorandum and Order.

Once the defendant articulates such a reason, the burden is on the plaintiff to show the defendant's stated reason is merely a pretext for discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 804-05; *Gibson*, 776 F.3d at 540.

## B.  Age Discrimination Under ADEA

### 1.  Prima Facie Case

To establish a prima facie case of age discrimination, Jerabek must show she (1) was at least 40 years old, (2) suffered an adverse employment action, (3) was meeting her employer's legitimate expectations at the time of the adverse action, and (4) was replaced by someone substantially younger or substantially younger, similarly situated employees were treated more favorably. *Holmes*, 729 F.3d at 822 (citation omitted); *Faulkner v. Douglas Cty. Nebraska*, 906 F.3d 728, 734 (8th Cir. 2018). In the federal employment context, "age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020). The federal employment portion of the ADEA "does not require proof that an employment decision would have turned out differently if age had not been taken into account." *Id.* at 1174.

Assuming for purposes of the pending Motion for Summary Judgment that Jerabek has established a prima facie case of age discrimination, the burden then shifts to the Defendant to articulate legitimate, nondiscriminatory reasons for the alleged adverse employment actions.

### 2.  Legitimate, Nondiscriminatory Reasons

"The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson*, 643 F.3d at 1047 (internal quotation marks and citation omitted).

Jerabek claims she suffered from the following adverse employment actions: the December 7, 2017, Letter of Reprimand; removal of her title of Acting CED;

placement on an OTI; and termination. (Filing 90 at CM/ECF p. 15). Assuming for purposes of argument that these all qualify as "adverse employment actions," the Defendant has established legitimate, nondiscriminatory reasons for each of these actions.

### a. Letter of Reprimand

It is undisputed that CED Sack documented several deficiencies in Jerabek's performance. Jerabek was issued a Letter of Reprimand to address legitimate business concerns related to a box of documents she hid under a table in the ADP room before leaving on vacation. The box contained at least one original document with confidential information, which was not properly safeguarded, not processed according to procedure, and required producers to re-sign documents. Moreover, only ADP equipment was to be stored in the ADP room, and other employees would not know to look for needed documents in that room. The Letter of Reprimand was issued after consulting with the Administrative Officer and Employee Labor Relations Specialist. The Letter of Reprimand is properly characterized as an employment decision based upon poor job performance and, as such, is not prohibited by the ADEA. *See Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011).

### b. Removal of Acting CED Title

CED Sack removed Jerabek's Acting CED title and duties to allow her to catch up on her work and focus more on her PT duties. DD Benner agreed with this decision. It was reasonable for Sack and Benner to conclude that Jerabek needed more time to focus on her duties, particularly those noted as being deficient in her FY 2017 Performance Appraisal. CED Sack's decision to remove Acting CED duties was simply a business judgment, which is not a proper subject for judicial oversight. *See Evers v. Alliant Techsystems, Inc*., 241 F.3d 948, 956 (8th Cir. 2001).

### c. Placement on OTI

Jerabek was given an "unsuccessful" rating in her FY 2017 performance review issued on December 7, 2017, because she was not meeting the expected performance standards. CED Sack documented that Jerabek:

- repeatedly issued interest payments when interest was not due
- failed to load dates into the subsidiary file, which resulted in the issuance of late-payment interest
- failed to timely issue payments resulting in the issuance of late-payment interest
- failed to complete the update and clean up a report, as directed by the CED
- failed to submit the CRP Docket to STO, as required by procedure
- failed to timely review and complete date-of-death workflows, as directed by the CED
- failed to maintain the administration files according to 25-AS
- failed to timely and properly load powers of attorney, assignments, and joint payments into the system

CED Sack and DD Benner discussed Jerabek's performance deficiencies with the Administrative Officer and Employee Labor Relations. DD Benner felt Jerabek's repeated mistakes were creating a level of distrust. (Filing 84-2, Benner Decl. ¶ 15).

Jerabek was placed on an OTI after she continued to make many of the same types of errors that were noted in her FY 2017 Performance Appraisal. By March 2018, Jerabek was still not meeting the second element of her FY 2018 Performance Plan. CED Sack and DD Benner consulted with Employee Labor Relations and were advised to place Jerabek on an OTI to help get her back to a "fully successful" level of performance. CED Sack supported each cited performance deficiency with documentation and Handbook references. Under the terms of the OTI, CED Sack met periodically with Jerabek to review her progress and provide feedback on her performance. To ensure correct and consistent instruction, and to determine whether Jerabek's performance was improving, Jerabek was directed to bring her questions

to CED Sack. Placement of Jerabek on an OTI is yet another employment decision based upon her continued poor job performance and, as such, is not prohibited by the ADEA. *See Haigh*, 632 F.3d at 471.

### d. Termination

After the Letter of Reprimand and the 2017 Performance Appraisal made clear that Jerabek had several performance issues, Jerabek was terminated because she continued to make the same or similar errors while on the OTI and exceeded the number of exceptions allowed under the OTI.[12] (Filing 84-1, Sack Decl. ¶¶ 114-139 & Attch. P, T, Y). During the OTI period, Jerabek violated various Handbook procedures, specifically FSA Handbook 1-CM, including processing forms that were not properly witnessed, failing to verify signature authority, and failing to verify redelegation authority. Violating an employer's policy is a legitimate, non-discriminatory reason for termination. *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (employer had legitimate, nondiscriminatory reason for terminating employee for violating company policy that prohibited sleeping on the job); *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 935 (8th Cir. 2006) ("We have consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee").

---

[12] The exceptions made by Jerabek during the OTI period are well documented, and Jerabek admitted to three of the four OTI exceptions in full and part of the remaining exception. (Filing 84-5, Jerabek Depo. 157:19-158:6 & Ex. 20 (as to the first exception, Jerabek admitted she recorded FSA-211s that were not properly witnessed by an FSA employee who verifies the identity of the grantor); 158:15-159:21 & Ex. 21 (as to the second exception, Jerabek admitted she accepted an invalid signature without verifying the proper signature authority was on file); 162:13-171:9 & Ex. 23, 24 (as to the third exception, Jerabek admitted she accepted a Power of Attorney form for an LLC that was only signed by one of the LLC members, without verifying the entity documents provided for redelegation of that signature authority); 178:25-179:10 (as to the fourth exception, Jerabek admitted seven of the farm-record changes given to her in September 2017 had not been made by June 2018).

### 3. Pretext

Because the Defendant has articulated legitimate, nondiscriminatory reasons for the adverse employment actions about which Jerabek complains, the burden shifts to the Plaintiff to show the Defendant's stated reasons are merely pretexts for age discrimination. "The showing of pretext necessary to survive summary judgment requires more than merely discrediting the employer's proffered reason for the adverse employment decision. The plaintiff's age must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." *Gardner v. Wal-Mart Stores, Inc.*, ___ F.4th ___, 2021 WL 2557898, at *2 (8th Cir. June 23, 2021) (internal quotation marks and citations omitted).

> A plaintiff may demonstrate a material question of fact regarding pretext in at least two ways. The plaintiff show[s] that the employer's explanation is unworthy of credence . . . because it has no basis in fact. Or the plaintiff persuad[es] the court that a prohibited reason more likely motivated the employer. Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.

*Id*. (internal quotation marks and citations omitted). "While the proof necessary to establish a prima face case is minimal, [Jerabek] must present 'more substantial evidence' to establish pretext because 'evidence of pretext . . . is viewed in light of the employer's justification.'" *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 805 (8th Cir. 2019) (quoting *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015)).

Here, Jerabek fails to show that the performance deficiencies which were the basis for the adverse employment actions had no basis in fact. To the contrary, and as noted above, she either admitted to the exceptions in the OTI or had no evidence to contradict the exceptions. Further, CED Sack documented Jerabek's performance deficiencies through emails and discussion summaries for months preceding the issuance of the OTI and by issuance of a Letter of Reprimand and in Jerabek's FY

2017 Performance Appraisal. When CED Sack reached the point of proposing to terminate Jerabek for these performance deficiencies, the proposal went through three levels of review. First, CED Sack and DD Benner consulted with Employee Labor Relations before proposing the removal. (Filing 84-2, Benner Decl. ¶ 29; Filing 84-4, Simmons Decl. ¶ 7). Second, the County Committee decided Jerabek's unacceptable performance warranted removal. (Filing 84-2, Benner Decl. ¶ 35 & Attch. B & C; Filing 84-4, Simmons Decl. ¶ 8(c)). And finally, the State Committee found that substantial evidence existed for the County Committee to sustain the charge of unacceptable performance and the decision to remove Jerabek from service. (Filing 84-4, Simmons Decl. ¶¶ 9(c), 9(d) & Attch. E).

Nor has Jerabek convinced the court that her age more likely motivated the Defendant's adverse employment actions. *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 808 (8th Cir. 2020) (plaintiffs seeking to show pretext in this way must show "*both* that the reason was false, *and* that discrimination was the real reason." (citation omitted)). Jerabek alleges that after she was terminated, Defendants hired at least one individual "significantly under the age of 40" to perform her job. (Filing 26 ¶ 53). Even if true, this is insufficient to meet her burden to establish pretext. The Eighth Circuit Court of Appeals has held the hiring of younger employees, standing alone, does not create an inference of age discrimination. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 517, 521 (8th Cir. 2011) (citing *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007) (noting being "replaced by someone substantially younger . . . possesses insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against") and *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007) (pretext for age discrimination was not established where the only evidence was that plaintiff was replaced by someone younger)).

Jerabek also attempts to show pretext by suggesting that the Defendant treated other employees who were committing errors, such as PT Vanis, more favorably.[13]

---

[13] *See* Filing 90 at CM/ECF p. 19 ("[G]iven the fact that Ms. Vanis entered fourteen late payments as did Ms. Jerabek, it is clear that CED Sack was scrutinizing

"At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous. The comparator must be similarly situated in all relevant respects." *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 808-09 (8th Cir. 2020) (internal quotation marks and citations omitted). "[I]ndividuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gardner*, 2021 WL 2557898, at *4 (citations omitted).

PT Vanis is not a valid comparator to Jerabek because Vanis was a Grade 5 employee with only a few years of FSA experience, and Jerabek was a Grade 7 PT who had worked for FSA since 1990. Further, Jerabek has not shown that the other employees who allegedly handled PII in the same way as Jerabek, but without discipline, had the same supervisor, were subject to the same standards, and were engaged in the same conduct without any mitigating or distinguishing circumstances. Specifically, no one else is alleged to have hidden documents in the locked ADP room or given producer PII to someone not authorized to have it, as Jerabek did.

Jerabek's arguments that she did not receive a mentor to improve her performance and that CED Sack has unrealistic expectations are excuses for poor performance, not proof of pretext. *See Haigh*, 632 F.3d at 471 ("While there certainly appears to be a personal conflict between [the plaintiff and her employer] that led, in part, to [the plaintiff's] termination, there is no suggestion of age discrimination to allow [the plaintiff] to survive summary judgment.").

---

Ms. Jerabek more than she was other employees who . . . were not in a protected class."); Filing 90 at CM/ECF p. 19 ("Jerabek was acting no different than the other PTs with respect to PII and yet she was the only one disciplined for her handling of PII."); Filing 90 at CM/ECF p. 20 ("PT Vanis was listed as the Back Up for Farm Record Updates and yet there is no evidence that PT Vanis was counseled or disciplined for the state of the Farm Record updates.").

Finally, Jerabek's suggestion that pretext is evident from the fact that CED Sack spent so much time documenting Jerabek's errors, but she was not involved in the County Committee's ultimate decision to terminate Jerabek, supports the conclusion that her termination was an unbiased decision subject to multiple separate levels of review as a form of "checks and balances," not evidence of pretext.

Jerabek has failed to raise a genuine issue of fact that the alleged discrimination was due to her age rather than repeated performance problems. Therefore, summary judgment on Jerabek's ADEA discrimination claim must be granted in favor of the Defendant. *Haigh*, 632 F.3d at 471 (the ADEA "'do[es] not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices.'" (quoting *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997)); *see also Evers*, 241 F.3d at 956 ("A company's exercise of its business judgment is not a proper subject for judicial oversight." (internal quotation marks and citation omitted)).

## C.  Retaliation Under Title VII & ADEA

### 1.  Title VII

Jerabek claims that after she filed two EEO complaints in February 2017 and February 2018, including the withdrawal of one of those complaints, she suffered adverse employment actions. (Filing 26 ¶¶ 19, 33).[14] Her Third Cause of Action (Filing 26 ¶¶ 68-74) alleges retaliation under Title VII, stating that she "belonged to protected classes under Title VII." (Filing 26 ¶ 70).

---

[14] As noted above, neither party has directed the court to actual copies of the EEO complaints. The court will assume for purposes of the pending Motion for Summary Judgment that Jerabek's EEO complaints were based on age discrimination.

Title VII prohibits retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Under Title VII, it is an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race, color, religion, sex, or national origin*; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's *race, color, religion, sex, or national origin*.

42 U.S.C. § 2000e-2(a) (emphasis added).

Here, Jerabek's Amended Complaint (Filing 26), her withdrawal of her first EEO complaint (Filing 84-5 at CM/ECF p. 73), and her deposition testimony do not indicate that Jerabek complained about discrimination or retaliation based on her membership in a class protected under Title VII—race, color, religion, sex, or national origin. In her deposition, Jerabek testified she was not claiming discrimination because of her sex or gender. (Filing 84-5, Jerabek Depo. 8:21-9:8). When asked whether she thought the actions by the Defendant were because of her sex, Jerabek responded, "[i]f age is part of sex." Jerabek then admitted sex was not a basis for her claims. (Filing 84-5, Jerabek Depo. 74:8-16). Jerabek could not identify any protected basis other than age. (Filing 84-5, Jerabek Depo. 74:23-75:5).

Because age is not an enumerated category under Title VII, Jerabek's complaint of age discrimination cannot support a Title VII retaliation claim. *See Williams v. H & H Auto Parts, LLC*, No. 8:18-CV-137, 2020 WL 490963, at *11 (D. Neb. Jan. 30, 2020) ("opposition to *age*-based discrimination does not fall within

Title VII's purview"); *Bauer v. Curators of the Univ. of Missouri*, No. 0704044CVCFJG, 2010 WL 1752024, at *7 (W.D. Mo. May 3, 2010) (Title VII retaliation claim dismissed when plaintiff's grievance only complained of discrimination based on age, salary, seniority, and disability because plaintiff did not engage in statutorily protected activity under Title VII); *White v. Arkansas Dep't of Health & Hum. Servs.*, No. 5:04CV0318 JLH, 2006 WL 229896, at *3 (E.D. Ark. Jan. 30, 2006) ("Title VII does not prohibit discrimination on the basis of age").[15]

## 2. ADEA

The *McDonnell Douglas* burden-shifting framework discussed above with regard to Jerabek's discrimination claim applies to retaliation claims as well. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006). To make out a claim of retaliation, Jerabek must "show that she participated in a protected activity, that [her employing agency] treated her in a manner that was materially adverse, and that there was a causal relationship between the two." *Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009) (discussing age-retaliation claim against federal agency).

---

[15] The Defendant makes this argument in its brief (Filing 86 at CM/ECF pp. 19-20), and Jerabek does not respond or object to it. (Filing 90). Therefore, Jerabek has abandoned her Title VII retaliation claim. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Blackwell v. Alliant Techsystems, Inc.*, No. 13-00468-CV-W-GAF, 2015 WL 13333503, at *9 (W.D. Mo. May 18, 2015), *aff'd*, 822 F.3d 431 (8th Cir. 2016) (plaintiff's failure to address defendants' arguments on some of plaintiff's claims was grounds to grant defendants summary judgment on such claims); *United States v. NHC Health Care Corp.*, 163 F. Supp. 2d 1051, 1059 (W.D. Mo. 2001) (dismissing four of plaintiff's claims as abandoned when plaintiff failed to address such claims, or defendants' discussion thereof, in opposition to defendants' motion for summary judgment).

As discussed in great detail above, assuming Jerabek can establish a prima facie case of retaliation,[16] the Defendant has articulated legitimate, non-retaliatory reasons for the alleged adverse employment actions[17] taken against her, and Jerabek has failed to show that these reasons are a pretext for retaliation. Put simply, an employee's EEO activity cannot insulate her from actions taken in response to her policy violations and poor performance. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (discussing retaliation and stating that "the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace").

Because Jerabek has failed to present evidence that could lead a reasonable jury to conclude that the Defendant's legitimate nondiscriminatory justifications for its adverse employment actions were a pretext for retaliation, summary judgment must be granted in favor of the Defendant on this claim. *See Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) ("The evidence must do more than raise doubts about the wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs.").

## D.  Due Process

Jerabek fails to address the Defendant's argument that it is entitled to summary judgment on Jerabek's due process claim. (Filing 86 at CM/ECF pp. 38-

---

[16] I need not address Jerabek's argument (Filing 90 at CM/ECF pp. 15-16) that the temporal proximity between her EEO complaints and the alleged adverse employment actions shows a causal connection between the two because I have assumed that Jerabek established a prima facie case of retaliation.

[17] As with Jerabek's discrimination claim, I assume for purposes of the pending Motion for Summary Judgment that the following constitute adverse employment actions: the December 7, 2017, Letter of Reprimand; the removal of Jerabek's title of Acting CED; her placement on an OTI; and her termination.

40). Accordingly, this claim shall be dismissed as abandoned. *See Satcher*, 558 F.3d at 735 ("failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Blackwell*, 2015 WL 13333503, at *9 (plaintiff's failure to address defendants' arguments on some of plaintiff's claims was grounds to grant defendants summary judgment on such claims); *NHC Health Care Corp.*, 163 F. Supp. 2d at 1059 (dismissing four of plaintiff's claims as abandoned when plaintiff failed to address such claims, or defendants' discussion thereof, in opposition to defendants' motion for summary judgment).

### E. Hostile Work Environment

Title VII and the ADEA make it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, . . . ." 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). This language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' . . . includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).

In her Brief in Opposition to the Defendant's Motion for Summary Judgment, Jerabek argues that the following constituted a hostile work environment: (1) CED Sack was friends with DD Benner and other PTs on social media, but was not friends with Jerabek or PT Wieskamp; (2) CED Sack and PT Vanis "have the same circle of friends"; (3) CED Sack allowed Jerabek to make a mistake so she could use it against her; (4) CED Sack left an "inappropriate and hostile note" on Jerabek's desk; (5) CED Sack photographed Jerabek's mistakes but does not recall photographing other PTs' mistakes; and (6) Jerabek's "every movement" was monitored. (Filing 90, pp. 23-25).

"Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'" *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (internal quotation marks and citations omitted). The standard for a hostile work environment is "a demanding one." *Wilkie v. Department of Health and Human Services*, 638 F.3d 944, 953 (8th Cir. 2011) (internal quotation marks and citation omitted). "[M]erely rude or unpleasant conduct is insufficient to support a claim; instead, [a]ctionable conduct must . . . be extreme." *Id.* (internal quotation marks and citation omitted). To prove a hostile work environment claim based on age, Jerabek must establish "(1) [she] belongs to a protected group, (2) [she] was subjected to unwelcome harassment based on age . . . , (3) the harassment affected a term, condition, or privilege of [her] employment; (4) [her] employer knew or should have known of the harassment; and (5) the employer failed to take proper action." *Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 184 (8th Cir. 2014).

Here, none of the conduct about which Jerabek complains has any connection to her age or her EEO activity—the protected classes in which she claims membership—and she cannot rely on speculation to show that the alleged hostile work environment was based on her age or protected activity. *See Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 541 (8th Cir. 2014); *Genosky v. Minnesota*, 244 F.3d 989, 993 (8th Cir. 2001) (plaintiff failed to raise a genuine issue of fact that the alleged harassment was due to her gender, rather than repeated performance problems). Further, allegations of mistreatment merely stemming "from inter-departmental politics and personality conflicts"—without some prohibited discriminatory animus—are not actionable. *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003); *see also Rickard*, 773 F.3d at 185 (ADEA hostile work environment case; "[the plaintiff] presents meager evidence that this mistreatment was because of his age, with most of his criticisms amounting to little more than an attack on [his employer's] crude managerial style"). Finally, while the incidents about which Jerabek complains may have been "rude or unpleasant," they were not "severe enough to affect the terms, conditions, or privileges of h[er] employment." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (internal quotation marks and citation omitted) (plaintiff's allegations that he was given too much work, was not allowed to use conference rooms, was refused when he

requested that duties be put in writing, was wrongfully blamed for failed audit, and was generally mistreated were not severe enough to affect terms, conditions, or privileges of employment). Therefore, Defendant's Motion for Summary Judgment must be granted on this claim.

Accordingly,

IT IS ORDERED:

1.    Defendant's Motion to Strike (Filing 96) the Affidavit of Rachelle Wieskamp (Filing 93 at CM/ECF pp. 55-59) is denied as moot because the court did not consider such affidavit in the disposition of Defendants' Motion for Summary Judgment.

2.    Defendant Howard-Greeley Farm Service Agency is dismissed for lack of jurisdiction.

3.    The Motion for Summary Judgment (Filing 82) filed by Defendants is granted.

4.    Judgment shall be entered by separate document in favor of Defendant Thomas J. Vilsack, Secretary of the United States Department of Agriculture, and against Plaintiff.

DATED this 7th day of July, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge